Terry Gene LAY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A01–1001–CR–17.

Court of Appeals of Indiana.

Aug. 30, 2010.

Transfer Denied Nov. 3, 2010.

Matthew Jon McGovern, Timothy R. Dodd, Evansville, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Terry Gene Lay ("Lay") was convicted of neglect of a dependent resulting in serious bodily injury,[1] a Class B felony, neglect of a dependent resulting in death,[2] a Class A felony, reckless homicide,[3] a Class C felony, and he admitted to being an habitual offender.[4] Lay appeals, raising the following restated issues:

I. Whether the trial court abused its discretion when it allowed Lay's wife ("Amanda") to waive her marital privilege and testify against Lay;

II. Whether the State provided sufficient evidence to sustain Lay's conviction for neglect of a dependent resulting in serious bodily injury, a Class B felony, in regard to his daughter, Ky.L.; and

---

1. *See* Ind.Code § 35–46–1–4(b)(2).

2. *See* Ind.Code § 35–46–1–4(b)(3).

3. *See* Ind.Code § 35–42–1–5.

4. *See* Ind.Code § 35–50–2–8.

III. Whether the abstract of judgment violates the constitutional prohibition against double jeopardy.[5]

We affirm.

## FACTS AND PROCEDURAL HISTORY

Lay and his wife Amanda lived with their five children in Evansville, Indiana. The children included three-year-old twins, K.L., a boy, and Ky.L., a girl. On Thursday, March 27, 2008, Amanda sent K.L. to his bedroom when K.L. told her that he did not have to listen to her. Later that day, when Amanda informed Lay of K.L.'s behavior, Lay entered K.L.'s room. Soon thereafter, Amanda heard thumps on the wall. She entered K.L.'s room and saw Lay with his hand on K.L.'s shoulder holding him down. That night, Amanda heard K.L. vomiting, and he ran a low-grade fever the next day. He did not eat, drink, or talk much on Saturday or Sunday.

Around noon on Monday, Amanda noticed that K.L.'s lips were blue and one of his hands was clenched. She called Lay who came to the home and then called 911. Sheriffs deputies and other emergency personnel were dispatched to Lay and Amanda's trailer. The emergency responders transported K.L. by ambulance to the hospital where he died from injuries resulting blunt force trauma to the head.

Before K.L. was taken to the hospital Lay left the home with some of the other children. Sergeant Darren Baumberger of the Vanderburgh County Sheriff's Department later found the children. One of the children was K.L.'s twin sister, Ky.L. who had lacerations on her face and severe bruising on her back and legs.

Lay and Amanda were arrested and charged with multiple counts of felony neglect. Lay was also charged with being an habitual offender. Amanda entered into a plea agreement under which she received a sentence of thirty-five years, agreed to cooperate with law enforcement, and to testify against Lay.

After a jury trial, Lay was found guilty of a Class A felony neglect of a dependent resulting in death, with respect to K.L., Class B felony neglect of a dependent causing serious bodily injury, with respect to Ky.L., and Class C felony reckless homicide. He admitted to the habitual offender allegation. The trial court entered judgment only on the felony neglect counts, and the habitual offender finding. The court sentenced Lay to consecutive terms of fifty years on the A felony conviction, enhanced by thirty years for the habitual offender finding and twenty years on the B felony for a total sentence of one hundred years executed. Lay now appeals. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

### I. Waiver of Marital Privilege

■ Lay argues that the trial court erred when it allowed Amanda to testify against him in contravention of the marital privilege. Further, Lay maintains that the State coerced Amanda into waiving the marital privilege and testifying against him. The State asserts that Lay has waived the issue of marital privilege on appeal. We agree.

Prior to trial, Lay filed a motion in limine to prohibit the State from eliciting confidential marital communications from his wife. Prior to Amanda's trial testimony, the trial court held a hearing on the motion and determined that Amanda's waiver of the marital privilege was voluntary and not coerced as alleged and per-

5. Ind. Const. art. I., § 14.

mitted her to testify against Lay. *Tr.* at 326–39. During the trial, Lay failed to raise any objections to Amanda's testimony on the ground that her testimony violated the marital privilege.

Our Supreme Court has observed:

> Only trial objections, not motions in limine, are effective to preserve claims of error for appellate review. Failure to object at trial to the admission of the evidence results in waiver of the error, notwithstanding a prior motion in limine.... To preserve a claimed error in the admission of evidence, a party must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue.

*Raess v. Doescher*, 883 N.E.2d 790, 796–97 (Ind.2008), *reh'g denied* (internal quotes and citations omitted). Because Lay did not raise any objection during Amanda's testimony at trial concerning any violation of the marital privilege, the issue is therefore waived on appeal. *Id.*

 Waiver notwithstanding, the trial court did not abuse its discretion when it allowed Amanda to testify against Lay. The trial court has broad discretion to admit evidence, and the trial court's ruling regarding the admissibility of evidence will be reviewed on appeal only for an abuse of that discretion. *Laster v. State*, 918 N.E.2d 428, 432 (Ind.Ct.App.2009). An abuse of discretion occurs only when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it, or if the trial court has misinterpreted the law. *Id.*

The marital privilege is statutory: "Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications.... (4) Husband and wife, as to communications made to each other." Ind. Code § 34–46–3–1(4). Regarding the privilege, our Supreme Court has explained:

"The marital privilege prevents a court from requiring a spouse to testify as to confidential marital communications, but does not bar the spouse from testifying if the spouse chooses to do so." *Glover v. State*, 836 N.E.2d 414, 422 (Ind.2005).

The record before us indicates that Amanda voluntarily chose to waive the marital privilege and testify against Lay. Prior to testifying against Lay at trial, a hearing was held outside of the presence of the jury where Amanda was questioned by the trial court and counsel for both parties regarding her waiver of the marital privilege. Amanda testified that she knew of the marital privilege, that it had been explained to her, and that she had voluntarily chosen to waive the marital privilege and testify against Lay. *Tr.* at 330. The trial court specifically questioned Amanda about her plea agreement, and Amanda testified that she signed the plea agreement voluntarily with the advice of her attorney. *Tr.* at 338–39. Relying on this testimony, the trial court found that Amanda had voluntarily waived her marital privilege. We find no abuse of discretion in the admission of Amanda's testimony against Lay.

## II. Sufficiency of the Evidence

 Next, Lay argues that the evidence was insufficient to support his conviction for Count I, neglect of a dependent resulting in serious bodily injury. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Alvies v. State*, 905 N.E.2d 57, 61 (Ind.Ct.App.2009). We only consider the evidence most favorable to the verdict and all reasonable inferences therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* It is not necessary that the evidence overcome

every reasonable hypothesis of innocence. *Dallaly v. State*, 916 N.E.2d 945, 950 (Ind. Ct.App.2009). A conviction may be sustained based on circumstantial evidence alone. *Fought v. State*, 898 N.E.2d 447, 450 (Ind.Ct.App.2008). Also, a conviction may be sustained on the uncorroborated testimony of a single witness or victim. *Baltimore v. State*, 878 N.E.2d 253, 258 (Ind.Ct.App.2007), *trans. denied.* We will affirm if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Gray v. State*, 871 N.E.2d 408, 416 (Ind.Ct.App. 2007), *trans. denied.*

■ Lay was charged under the following statutory provision:

(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that endangers the dependent's life or health;

. . . .

commits neglect of a dependent, a Class D felony.

(b) However, the offense is:

. . . .

(2) a Class B felony if it is committed under subsection (a)(1), . . . and results in serious bodily injury;

. . . .

Ind.Code § 35–46–1–4(a), (b)(2).

■ Lay argues that the only evidence presented at trial established that Amanda, not Lay, abused Ky.L. and that there is no evidence that Lay abused Ky.L. during the time span alleged in the charging information. Lay, however, was charged with neglect, not abuse. *Appellant's App.* at 19. "Neglect is the want of reasonable care—that is, the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experi-

ence of mankind . . . ." *White v. State*, 547 N.E.2d 831, 836 (Ind.1989) (quoting *Eaglen v. State*, 249 Ind. 144, 150, 231 N.E.2d 147, 150 (1967)). Thus, the State was not required to prove that Lay himself abused Ky.L.; rather, it only had to prove that he failed to take action that a reasonable parent would take, that such failure endangered Ky.L.'s life or health and resulted in serious bodily injury.

Lay also claims that the evidence did not show that he committed the specified offense against Ky.L. within the time frame alleged in the charging information. The charging information states that the neglect concerned the injuries sustained by Ky.L., between March 27, 2008, and March 31, 2008. *Appellant's App.* at 19.

Police photographs taken on March 31, 2008 show extensive bruising to Ky.L.'s back, lacerations to her face and an injury to her left eye. Forensic Pathologist Dr. Mark Levaughn testified that the photographs showed severe injuries and extensive bruising that would have been very painful to a small child. *Tr.* at 230. Amanda admitted that she caused the bruising found on Ky.L., but she was not questioned about the timing of her actions. *Tr.* at 369. A.B., one of Amanda's children, testified that Amanda told him the eye injury happened over the weekend of March 28–30, 2008. A.B.'s uncle Chris Lawrence, testified that he saw Ky.L. on March 28, 2008 and saw no injuries on her face. *Tr.* at 135–36; 157. A reasonable person could infer from the testimony cited above that the eye injury shown in the photographs of Ky.L. occurred sometime during the weekend of March 28 through March 30, 2008.

Lay claimed in a statement to police that Amanda told him that she had spanked Ky.L. on March 28, while he was at work. *State's Ex.* at 189–90. Lay also told police

that while he was watching movies and playing video games later on the same night (March 28) he heard Amanda spank Ky.L. on two different occasions: "I mean, I just heard, you know, whack, whack, whack. You know, I heard I told you to, you know it's time for bed, now you go to sleep, you know, both of them." *Id.* at 191. Later that night, Lay questioned Amanda concerning her punishment of the children, stating: "it sounded like to me Amanda that you're being you know a little hard on these kids." *Id.* at 192.

The fact that Lay heard the "spanking" while he was playing a video game in the living room and the children were in their bedrooms with the doors closed is circumstantial evidence of the fact that Amanda used excessive force in punishing Ky.L. This conclusion is further supported by the photographs of the injuries to Ky.L.'s face, back and legs. Such evidence is sufficient to support a reasonable inference that Ky.L.'s severe bruising occurred on March 28, 2008 while Lay was nearby, heard Ky.L. being abused and took no action. It is also sufficient to support Lay's conviction for neglect of a dependent resulting in serious bodily injury.

### III. Abstract of Judgment

 Finally, Lay claims a violation of the constitutional prohibition against double jeopardy,[6] arguing that the trial court erred when it listed Count II, reckless

homicide, as a conviction on the abstract of judgment. We disagree.

Our Supreme Court has stated that "a defendant's constitutional rights are violated when a court enters judgment twice for the same offense, but not when a defendant is simply found guilty of a particular count." *Green v. State,* 856 N.E.2d 703, 704 (Ind.2006). The Court explained further that: "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned." *Id.*[7]

Here, the trial court did not enter judgment on Count II, reckless homicide. Moreover, although the abstract of judgment contains an entry for Count II, no sentence is set forth in the abstract on that count. Therefore, we conclude that there is no violation of the prohibition against double jeopardy in the present case.[8]

Affirmed.

FRIEDLANDER, J., and ROBB, J., concur.

---

6. Ind. Const. art. I., § 14.

7. This court held in *Gregory v. State:* "A trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation. A double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the 'practical effect' of concurrent sentences or by merger after conviction has been entered." 885 N.E.2d 697, 703 (Ind.Ct.App. 2008), *trans. denied. Gregory* does not apply in the present case, because, here, the trial

court did not enter judgment on Count II, reckless homicide. *Appellant's App.* at 128.

8. The State also urges us to remand to the trial court for an amended abstract of judgment if only "for clarity in regard to the Department of Correction's records." *Appellee's Br.* at 19. However, the benefits that may result from the State's recommended action are in our estimation outweighed by considerations of judicial economy.