Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**DEBORAH K. SMITH**
Thorntown, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Mar 02 2012, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

BRYAN KEITH HUGHES,      )
                         )
    Appellant-Defendant,    )
                         )
        vs.           )    No. 06A04-1106-CR-385
                         )
STATE OF INDIANA,        )
                         )
    Appellee-Plaintiff.     )

APPEAL FROM THE BOONE CIRCUIT COURT
The Honorable Matthew C. Kincaid, Special Judge
Cause No. 06C01-1001-FB-38

**March 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Bryan Keith Hughes repeatedly punched his wife and also attempted to rape her. A jury found him guilty of class B felony attempted rape, class D felony domestic battery, and class D felony criminal confinement. The trial court sentenced Hughes to a total of sixteen years, with eight years executed and eight years suspended to probation.

On appeal, Hughes challenges the sufficiency of the evidence supporting his convictions; contends that his attempted rape and criminal confinement convictions violate double jeopardy principles; asserts that the trial court erred in admitting a letter that he wrote to his wife from jail as well as photographs of her injuries; and also claims that his sentence is inappropriate in light of the nature of the offenses and his character. Finding the evidence sufficient, no double jeopardy violation, no reversible evidentiary error, and that Hughes has failed to establish that his sentence is inappropriate, we affirm.

**Facts and Procedural History**

The facts most favorable to the jury's verdict are that in December 2009, Hughes and his wife K.H. lived in Lebanon with their seven children, ranging in age from one to seventeen. Hughes was a delivery driver, and K.H. was a stay-at-home mother. Hughes had learned that K.H. was having an extramarital affair, and the couple had discussed divorce. In early December, Hughes was arrested and charged with domestic battery on K.H. and was released on bond.

On the morning of December 17, 2009, K.H. drove Hughes to work in the family's only vehicle, a minivan. Later that day, K.H. met Hughes while he was on his delivery route

2

to give him some money. Hughes said that he wanted to work on their marriage, and K.H. replied that she wanted a divorce.

At approximately 9:30 p.m., K.H. picked up Hughes from work. Hughes got into the driver's seat and drove off with K.H. in the passenger's seat and their one-year-old son, Al.H., in the back seat. Hughes told K.H. to give him the cell phone that she had been given by her paramour. When she refused, he said, "[You're] gonna hand over the cell phone bitch," and punched her in the face. Tr. at 83.[1] K.H. gave Hughes the phone. Hughes drove toward her paramour's apartment complex in the Indianapolis area. He told her that she had ruined his life and pulled her hair and punched her head. K.H. scratched Hughes and threw a bottle of baby formula on him.

When they arrived at the apartment complex, Hughes demanded to know the location of her paramour's vehicle and apartment. K.H. told Hughes that she did not know. He punched and slapped her and pulled her hair. Hughes handed her his cell phone and said, "[H]ere bitch call nine one one.… [W]e're in Marion County, you have bruises all over you. I have scratches and I'm bleeding and … we will both go to jail. We will lose our kids and Marion County is hell and you do not want to go there." *Id*. at 87-88. K.H. got out of the

---

[1] Hughes's counsel included over 200 pages of the trial transcript in the appellant's appendix in violation of Indiana Appellate Rule 50(F), which says, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix." We also direct counsel's attention to Appellate Rule 46(A)(6)(c), which says that an appellant's statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony," and Appellate Rule 46(A)(8)(b), which says that an appellant's argument "must include for each issue a concise statement of the applicable standard of review." Finally, we direct the court reporter's attention to Appellate Rule 28(A)(8), which says that the transcript's "table of contents shall be a separately bound volume."

minivan with Al.H., but Hughes "forcibly" took him from her and drove Al.H. and K.H. back to Lebanon. *Id.* at 88. Along the way, he threw her paramour's cell phone out the window.

Hughes parked the minivan behind some barns across the street from their house and questioned K.H. about her paramour. He threatened to "snap [her] neck" and held her arms and slapped her face. *Id.* at 90. Hughes saw headlights from an approaching car and drove home. Hughes went upstairs to take a shower. K.H. told her children about what had happened "on the way home and that [she] knew something further was going to happen later on at night and that they needed to listen to [her] if [she started] screaming for them." *Id.* at 92. Hughes came downstairs after his shower and disconnected the cord from the family's landline phone. K.H. and the couple's two oldest children had cell phones, but Hughes had disconnected their cellular service and thus their phones were only capable of making 911 calls.

At approximately 11:00 p.m., Hughes demanded that K.H. accompany him upstairs. She said, "[N]o, I'm rocking [Al.H.]." *Id.* at 93. Hughes took the child from her and said, "[N]ow you'll come upstairs, bitch." *Id.* K.H. went upstairs to their bedroom, connected Al.H. to his gastric feeding tube, and placed him on the bed. Hughes fell asleep, and K.H. went into a bathroom and talked with her two oldest daughters about leaving the house. Hughes woke up and told K.H. to return to the bedroom. She changed into her pajama bottoms and lay next to Al.H. Hughes told K.H. that she "needed to move and lay next to him." *Id.* at 97. K.H. refused, so Hughes walked over to her side of the bed. He told her that he was going to "have his way with [her]," and she "told him that's not what [she] wanted to

4

do" and to "leave [her] alone." *Id*. at 98. As K.H. struggled with Hughes, he pulled off her pajama bottoms, lowered his pajama bottoms, and got on top of her.

K.H. kicked and scratched Hughes and pulled up her legs, "trying to not let him do what he wanted to do." *Id*. Hughes shoved his hand into her vaginal area, causing pain and a laceration. He also attempted to strangle her and repeatedly punched her face and head. K.H. yelled for the children. Hughes put his hand over her mouth and told her to "shut up" because "the kids would end up calling the police" and would be taken away from them and they would "both go to jail." *Id*. at 106. K.H. scratched Hughes's scrotum, drawing blood. He jumped back and said, "Bitch, you're gonna die now." *Id*. at 107. Hughes's blood spattered on one of K.H.'s socks and her pajama bottoms. K.H. tried to get up, but Hughes "threw [her] back down on the bed [and] locked the door." *Id*. at 107-08.

Their three oldest children unlocked the door and tried to enter the bedroom, but Hughes blocked the door. K.H. pulled on her pajama bottoms and tried to disconnect Al.H.'s feeding tube. The children pushed against the door, and Hughes stumbled and fell with his pajama bottoms around his ankles. K.H. went into a hallway bathroom and called 911 on one of the children's cell phones. Hughes took the phone and disabled it. K.H. told the children to get into the minivan, but Hughes got behind the wheel and drove away. Police officers took K.H. and the children to a motel and arrested Hughes at approximately 4:00 a.m.

The State charged Hughes with class B felony attempted rape, class B felony criminal deviate conduct, class D felony criminal confinement, and class D felony domestic battery. A jury found him not guilty of criminal deviate conduct and guilty on all other counts. The

trial court sentenced Hughes to a thirteen-year term on the attempted rape conviction, with eight years executed and five years suspended to supervised probation; a concurrent three-year executed term on the criminal confinement conviction; and a consecutive three-year suspended term on the domestic battery conviction, for an aggregate term of sixteen years, with eight years executed and eight years suspended to probation. Hughes now appeals.

**Discussion and Decision**

*I. Sufficiency of Evidence*

Hughes challenges the sufficiency of the evidence supporting his convictions. In reviewing sufficiency of the evidence claims, we neither reweigh evidence nor judge witness credibility. *Lay v. State*, 933 N.E.2d 38, 41 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and all reasonable inferences therefrom and will affirm if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id*. at 41-42. "[A] conviction may be sustained on the uncorroborated testimony of a single witness or victim." *Id*. at 42. We address Hughes's arguments regarding each conviction in turn.

*A. Attempted Rape*

Class B felony rape occurs when a person knowingly or intentionally has sexual intercourse with a member of the opposite sex when the other person is compelled by force or imminent threat of force. Ind. Code § 35-42-4-1(a).

> A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted.

6

Ind. Code § 35-41-5-1(a). Here, the State alleged that Hughes knowingly or intentionally attempted to have sexual intercourse with K.H. and took a substantial step toward raping her by "forcibly remov[ing] her pajama bottoms and attempt[ing] to have intercourse with her." Appellant's App. at 50.

Hughes "acknowledges that there is case law which supports an attempted rape conviction where the allegation involves removing clothing," but argues that because he and K.H. were married and "she had retired to the bedroom with [him] … additional evidence should exist to support the allegation of attempted rape." Appellant's Br. at 11 (citing *Dillworth v. State*, 425 N.E.2d 149 (Ind. 1981)). We categorically reject Hughes's invitation to distinguish between spouses and non-spouses for purposes of the rape statute, which draws no such distinctions.[2] We also reject Hughes's blatant invitation to reweigh evidence and judge witness credibility in his favor, which is not within our prerogative on appeal. Quite simply, K.H.'s testimony that Hughes forcibly took off her pajama bottoms and attempted to have sexual intercourse with her after she told him to leave her alone is more than sufficient to sustain Hughes's conviction for attempted rape.

## B. Criminal Confinement

Class D felony criminal confinement occurs when a person knowingly or intentionally confines another person without the other person's consent. Ind. Code § 35-42-3-3(a). For

---

[2] K.H. testified that shortly before he attempted to rape her, Hughes said that "I was his wife and when we got married that he owned me. That's what the Bible said and that I needed to do what he said." Tr. at 97. Notwithstanding Hughes's personal views regarding the nature of the marital relationship, the Indiana legislature has seen fit to criminalize *all* nonconsensual intercourse between persons of the opposite sex, whether spouses or strangers.

purposes of this statute, "confine" means "to substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1. The gist of Hughes's one-sentence argument regarding his criminal confinement conviction is that K.H. was not confined because the bedroom door could be unlocked from the inside simply by turning the doorknob. This argument disregards K.H.'s testimony that Hughes substantially interfered with her liberty without her consent by throwing her on the bed and blocking the bedroom door to keep her in and their children out. After the children forced the door open, K.H. left the bedroom and called 911. This evidence is more than sufficient to support Hughes's criminal confinement conviction.

### C. Domestic Battery

Class D felony domestic battery occurs when a person knowingly or intentionally touches his or her spouse in a rude, insolent, or angry manner that results in bodily injury to the spouse and commits the offense in the physical presence of a child less than sixteen years of age, knowing that the child was present and might be able to see or hear the offense. Ind. Code § 35-42-2-1.3(a) and -(b). Here, the State alleged that Hughes committed domestic battery "on or about December 18, 2009," by hitting K.H. in the face, which resulted in "bruising on or around her face and neck area," in the presence of one-year-old Al.H. Appellant's App. at 51.

Hughes argues that his domestic battery conviction should be reversed because K.H.'s testimony

> confirmed that the touching which occurred between her and [Hughes] actually
> occurred on the ride home from Indianapolis on December 17, 2009 when
> Kelly picked [Hughes] up from work. This alleged battery was not charged as
> the charge of domestic battery resulted from the incident which [K.H.] alleged

8

occurred on December 18. [Hughes] was not charged with any battery on December 17, 2009.

Appellant's Br. at 13-14 (citation to appendix omitted).

Hughes's argument ignores the fact that K.H. also testified that he "kept punching [her] in the face" while Al.H. was lying next to them in their bedroom sometime after 11:00 p.m. on December 17 – in other words, on or about December 18 – and the State relied on that testimony in prosecuting him for domestic battery. Tr. at 114; *see also id.* at 354 (prosecutor's closing argument) ("On the night of December Seventeenth into the early morning hours of December Eighteenth Two Thousand Nine, Bryan Hughes struck [K.H.] several times all over her body. He did so in front of their one year old son. He knew the son was there, *because he himself had carried him up there* [that is, to the bedroom] and he caused the injuries you see in those photos.") (emphasis added). K.H.'s testimony is more than sufficient to sustain Hughes's domestic battery conviction.

## II. Double Jeopardy

Next, Hughes argues that his attempted rape and criminal confinement convictions violate double jeopardy principles, claiming that the force that he used to confine K.H. did not exceed that used during his attempt to rape her. Even assuming that the facts as Hughes describes them would establish a double jeopardy violation, his argument fails because the evidence presented at trial established that he continued to confine K.H. after he attempted to rape her by throwing her onto the bed and then locking and blocking the bedroom door. *See id.* at 354-55 (prosecutor's closing argument) ("Bryan Hughes confined [K.H.] without her permission. He held her down on the bed and he had his hand around her neck. When she

9

tried to get up off of the bed, he threw her back onto the bed and he locked the door as she tried to get up and leave."); *Oeth v. State*, 775 N.E.2d 696, 703 (Ind. Ct. App. 2002) (noting that double jeopardy violation does not occur where confinement extends beyond that necessary to accomplish attempted rape) (citing *Richardson v. State*, 717 N.E.2d 32, 55-56 (Ind. 1999) (Sullivan, J., concurring)), *trans. denied* (2003).

### III. Admission of Letter

At trial, the State offered into evidence several letters that Hughes had written to K.H. while he was in jail awaiting trial. Over Hughes's objection on relevancy and prejudice grounds, the trial court admitted one redacted letter in which Hughes wrote that he would "never defile [K.H.'s] body again" and "never lay an angry hand on [her] again." State's Ex. 64A. On appeal, Hughes argues for the first time that the admission of the letter violated the marital privilege. Because Hughes did not object on this basis at trial, his argument is waived. *See Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) ("[A] a defendant may not argue one ground for an objection to the admission of evidence at trial and then raise new grounds on appeal. This ensures that a trial judge is fully alerted to the legal issue being raised.") (citation and footnote omitted).[3]

### IV. Admission of Photographs

Hughes also contends that the trial court erred in admitting photographs of K.H. because they depict injuries that she received prior to the domestic battery with which he was

---

[3] To the extent Hughes argues that the letter should not have been admitted because its "prejudice … outweighs any probative value," Appellant's Br. at 19, this argument is waived because he cites no authority to support it. *Casady v. State*, 934 N.E.2d 1181, 1191 (Ind. Ct. App. 2010), *trans. denied* (2011).

charged in this case. We agree with the State that any error in the admission of the photographs can only be considered harmless because they were merely cumulative of unobjected-to testimony regarding the same injuries that were depicted in the photographs. *See* Tr. at 277-78, 299-300 (testimony of nurse and doctor regarding bruising around K.H.'s face and neck, among other areas); *Gregory v. State*, 604 N.E.2d 1240, 1242 (Ind. Ct. App. 1992) ("Any error in the admission of evidence is harmless if the same or similar evidence was admitted without objection."), *trans. denied* (1993).[4]

## V. Sentencing

Finally, Hughes asks us to reduce his sixteen-year sentence pursuant to Indiana Appellate Rule 7(B), which says that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We have said,

> The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.

---

[4] In discussing this issue, Hughes also contends that the trial court erred in admitting K.H.'s testimony regarding their altercation in the minivan. Hughes did not object to this testimony at trial and therefore has waived any claim in this regard. *See Lanham v. State*, 937 N.E.2d 419, 423 (Ind. Ct. App. 2010) ("The failure to object at trial to the admission of evidence results in waiver of that issue on appeal.").

*Coleman v. State*, 952 N.E.2d 377, 384 (Ind. Ct. App. 2011) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225, 1224 (Ind. 2008)).  The defendant bears the burden of persuading us that his sentence is inappropriate.  *Id.*[5]

"When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence."  *Peters v. State*, 959 N.E.2d 347, 356 (Ind. Ct. App. 2011).  When a trial court deviates from the advisory sentence, "we consider whether there is anything more or less egregious about the offense that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence."  *Id.*  The advisory sentence for a class B felony is ten years, with a range of six to twenty years.  Ind. Code § 35-50-2-5.  The advisory sentence for a class D felony is one and a half years, with a range of six months to three years.  Ind. Code § 35-50-2-7.

> Hughes argues that
>
> his conduct were [sic] not worse than other offenses of this nature.  The parties were married and the victim voluntarily entered the marital bedroom on the night of the incident.  Although [Hughes's] children were ultimately involved in the incident and testified as to the impact the crime had on them, it was [K.H.] who encouraged initially their involvement by telling them to listen for her and keep their phones close.

Appellant's Br. at 26.

---

[5] Hughes also asserts that "all sentences should have been concurrent," Appellant's Br. at 24, but he cites no authority to support this assertion.  As such, this argument is waived.  *Casady*, 934 N.E.2d at 1191.

Hughes's contention that his offenses are not serious because he was married to his victim is, quite frankly, ridiculous and speaks volumes about his character.[6]  Contrary to Hughes's assertion, K.H. followed him into the "marital bedroom" only because he had plucked their one-year-old son out of her arms and walked upstairs after calling her a "bitch" in front of their children.  He then yanked off his wife's pajama bottoms, attempted to rape her, and punched her face, all while their infant son was lying next to them and their other children were within earshot.  When the children responded to their mother's cries for help, Hughes attempted to thwart their rescue and then fled the home in the family's only vehicle.  Furthermore, as the State observes, Hughes's "crimes have caused his wife and children emotional distress and anxiety, as well as financial hardship."  Appellee's Br. at 26 (citations to transcript omitted).  In sum, the nature of Hughes's offenses clearly calls for a sentence above the advisory term.

The nature of the offenses, as well as Hughes's minimization of them, do not reflect favorably on his character.  Although he had been steadily employed  and had no criminal convictions, he had been arrested for allegedly battering K.H. just a couple weeks before he battered her again, attempted to rape her, and confined her.  Hughes's violent actions demonstrate a stunning lack of sensitivity to his wife and seven children.  After Hughes was arrested for the instant offenses, he repeatedly violated a no-contact order that K.H. had

---

[6] Hughes demonstrated his lack of character at the sentencing hearing by "smil[ing] and win[king]" at K.H. Tr. at 401.  The trial court properly observed that "that's a very offensive thing to do to a victim of a sex offense and it shows a disrespect for the seriousness of the proceedings and the seriousness of … the conviction." *Id*. at 433.

13

obtained against him.  Based on the foregoing, we conclude that Hughes has failed to persuade us that his sentence is inappropriate.[7]  Therefore, we affirm.

Affirmed.

MAY, J., and BROWN, J., concur.

---

[7] The State suggests that Hughes's sentence is too lenient but ultimately "urges [us] to affirm the judgment of the trial court."  Appellee's Br. at 27.