## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2018, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Smalls,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | August 31, 2018<br><br>Court of Appeals Case No.<br>18A-CR-433<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc T. Rothenberg, Judge<br><br>Trial Court Cause No.<br>49G02-1611-F2-44593 |

**Brown, Judge.**

James Smalls appeals convictions for criminal confinement as a level 3 felony and intimidation as a level 5 felony. We affirm.

### *Procedural History*

In August 2016, Michael McMuray lived in Indianapolis with his girlfriend Heavenleigh Gentry. McMuray had met Smalls four or five months earlier through their mutual friend Blossom Kirby. McMuray, Gentry, and Kirby were at McMuray's house on the evening of August 24, 2016. Kirby left the house at around 1:00 a.m., and McMuray and Gentry fell asleep.[1]

At approximately 7:30 a.m. on August 25, 2016, Smalls and another man knocked on the front door of McMuray's house. Gentry was on the bed, and McMuray was waking up on the couch.[2] McMuray opened the door, recognized Smalls but not the other man, and asked Smalls if he had the seventy dollars McMuray had previously loaned him, and Smalls indicated that he did not have the money. McMurray closed the door, turned to walk away, and heard another knock on the door. When McMuray opened the door, a third man, Ulysses Sanders, stuck his arm through the open door and pointed a gun at McMuray's face. McMuray pressed his body against the door in an attempt to push Sanders out and close the door, but Sanders's arm was already

---

[1] McMuray testified that he, Gentry, and Kirby were "talking about a sexual endeavor" but that not "everybody was feeling comfortable so we all just backed out." Transcript Volume II at 21.

[2] Photographs admitted into evidence show a mattress on the floor directly adjacent to a living room area and couch.

in the door, and McMuray tried to obtain control of the gun. Smalls and the other two men forced their way into the home, knocked McMuray to the floor, and started to punch, kick, and stomp on him. McMuray screamed for help, yelled his neighbor's name a couple of times, and tried to block the men's blows. Gentry "was crying and hysterical" and "was sitting up on the bed and she watched the whole thing and screamed . . . ." Transcript Volume II at 28. The three men dragged McMuray into the middle of the room, and Smalls asked for money. Smalls and Sanders held guns, and the other man had a knife with an eight- or nine-inch blade.

[4]     Sanders walked over to Gentry, handed her his gun, and asked her to shoot McMuray. Gentry refused. Sanders then took the gun from Gentry, gave it to McMuray, and instructed him to shoot Gentry. McMuray also refused. Smalls said, "he ain't got no heart." *Id*. at 31. Smalls asked McMuray where he kept his money, McMuray said he had ten dollars on the computer stand, and Smalls took the money. Smalls walked back and forth while holding his gun in his hand, and Gentry was sitting on the bed. At some point, McMuray indicated he would shoot Gentry. Sanders handed the gun to McMuray, and McMuray pointed the gun at Sanders's face and pulled the trigger, but the gun did not fire. Sanders wrestled the gun from McMuray and repeatedly struck him in the head with the butt of the gun, and Smalls pointed his gun at McMuray and said, "I'll shoot you, you dumb b----." *Id*. at 38. Gentry continued to sit on the bed, watch the attack, and cry. Smalls announced "we're gonna straighten this out right now" and called Kirby, and McMuray

heard Smalls say, while on the phone, "who did you say raped you?  Who did you say robbed you?"  *Id.* at 39.  Smalls hung up and said "it don't look good for you."  *Id.*  Sanders again passed his gun to Gentry and attempted to convince her to shoot McMuray, and the intruders "were making comments about what they were going to do with her after they killed and got [McMuray] out of the why [sic]."  *Id.* at 39-40.  Kirby "burst in the door" and was "agitated that [McMuray] was still alive."  *Id.* at 40.  The three intruders turned to Kirby and, when they were paying attention to her, McMuray jumped up and "bolted out" the front door, ran toward a neighbor, and screamed for help and to call the police.  *Id.*  Soon afterwards, McMuray saw Smalls, Sanders, and the third man exit his home and go down the street.  The responding police officer observed McMuray's injuries and that Gentry "seemed to be very scared at the time."  *Id.* at 57.  While law enforcement was gathering information, Kirby approached and began yelling and screaming, and the officer detained her.  McMuray was treated at the hospital.

[5]  The State charged Smalls with: Count I, burglary as a level 2 felony; Count II, armed robbery as a level 3 felony; Count III, criminal confinement of McMuray as a level 3 felony; Count IV, criminal confinement of Gentry as a level 3 felony; Count V, intimidation of McMuray as a level 5 felony; Count VI, intimidation of Gentry as a level 5 felony; and Count VII, battery resulting in moderate bodily injury to McMuray as a level 6 felony.  At trial, Amber Fiers testified that she was dating Smalls in August 2016, that August 24th was their one-month anniversary, and that Smalls was with her the entire evening of

August 24th and morning hours of August 25th. The jury found Smalls guilty on all counts. The court sentenced Smalls to twenty-three years with five years suspended on Count I, ordered that fourteen years of the sentence be served in the Department of Correction and four years be served through community corrections, and ordered that he serve one year on probation. The court also sentenced him to ten years for each of his convictions under Counts II, III, and IV, four years for each of his convictions under Counts V and VI, and one year for his conviction under Count VII, all to run concurrently with his sentence under Count I.

## Discussion

[6]     Smalls claims the evidence does not support his convictions of criminal confinement of Gentry under Count IV and intimidation of Gentry under Count VI. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id*. A conviction may be sustained on the uncorroborated testimony of a single witness or victim. *Lay v. State*, 933 N.E.2d 38, 42 (Ind. Ct. App. 2010), *trans. denied*. A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Maul v.*

*State*, 731 N.E.2d 438, 439 (Ind. 2000); *Gonzalez v. State*, 908 N.E.2d 338, 340 (Ind. Ct. App. 2009).

[7] Ind. Code § 35-42-3-3 provides in part that a person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement and that the offense is a level 3 felony if it is committed while armed with a deadly weapon. "Confine" means to substantially interfere with the liberty of a person. Ind. Code § 35-42-3-1. The State, under Count IV, alleged that Smalls and his accomplices knowingly confined Gentry without her consent while Smalls and/or Sanders were armed with a handgun. Ind. Code § 35-45-2-1 provides in part that a person who communicates a threat to another person, with the intent that the other person engage in conduct against the other person's will, commits intimidation and that the offense is a level 5 felony if, while committing it, the person draws or uses a deadly weapon. "Threat" means an expression, by words or action, of an intention to, among other things, unlawfully injure the person threatened or another person or unlawfully subject a person to physical confinement or restraint, or commit a crime. Ind. Code § 35-45-2-1(d). The State, under Count VI, alleged that Smalls and his accomplices communicated a threat to Gentry with the intent that she engage in conduct against her will, to-wit, to shoot McMuray, and in doing so they drew or used a handgun.

[8] Smalls argues that Gentry did not testify and the State did not admit any statements she may have made to anyone. He argues "whether Gentry was in fact confined and, if so, whether that confinement was against her will and

whether whatever, if anything, was conveyed from Smalls to Gentry were threats are wholly subjective inquiries" and "Gentry's testimony is the only evidence that could prove what the State has asserted." Appellant's Brief at 10.

[9] The State responds that it was not required to present Gentry's testimony to show that Smalls committed the crimes against her and points to the violence of the home invasion, McMuray's injuries, the fact the intruders were armed, Gentry's demeanor during the attack, that Smalls pointed his firearm at McMuray and threatened to shoot, that the intruders openly discussed what they would do with Gentry after they killed McMuray, and that the intruders cajoled McMuray and Gentry into shooting one another. It maintains that Smalls's argument is simply a request to reweigh the evidence.

[10] The jury heard the testimony of McMuray regarding the violent actions of Smalls and the other intruders during the home invasion. McMuray testified regarding the men's forceful entry into the residence while armed, the violent attack upon him, that Gentry was sitting on the mattress on the floor near the attack and witnessed the entire altercation, and that Gentry "was crying and hysterical." Transcript Volume II at 28. The State presented photographic evidence of, and testimony describing, McMuray's injuries as well as of the location of Gentry on the mattress on the floor relative to the attack upon McMuray in the residence. During the prolonged attack, Smalls and each of the other attackers were armed. McMuray testified that Gentry "watched the whole thing and screamed." *Id*. Smalls pointed his gun at McMuray and said he would shoot him. The men handed a gun to McMuray and directed him to

shoot Gentry, which he refused to do, and they handed a gun to Gentry and commanded her to shoot McMuray, which she refused to do. The intruders discussed "what they were going to do with [Gentry] after they killed" McMuray. *Id*. at 39. Kirby arrived and was agitated that McMuray was alive. The officer responding to the scene observed that Gentry was "very scared." *Id*. at 57.

[11] A reasonable jury could find from the testimony and evidence presented that Smalls and his accomplices, while armed, knowingly or intentionally substantially interfered with Gentry's liberty without her consent and that, while using a deadly weapon, they communicated a threat to Gentry by words or actions with the intent that she engage in conduct against her will to shoot McMuray as charged. Smalls's arguments constitute requests for this Court to reweigh the evidence, which we will not do. *See Jordan*, 656 N.E.2d at 817. Based upon the record, we conclude the State presented evidence of a probative nature from which the jury could find beyond a reasonable doubt that Smalls committed the offenses of criminal confinement of Gentry as a level 3 felony and intimidation of Gentry as a level 5 felony. For the foregoing reasons, we affirm Smalls's convictions.

[12] Affirmed.

Altice, J., and Tavitas, J., concur.