# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 12 2018, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jane Ann Noblitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua Wyatt,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

December 12, 2018

Court of Appeals Case No.
18A-CR-1089

Appeal from the Bartholomew
Superior Court

The Honorable James D. Worton,
Judge

Trial Court Cause Nos.
03D01-1709-F6-4876
03D01-1308-FD-4692

**Brown, Judge.**

[1] Joshua Wyatt appeals his conviction and sentence for invasion of privacy as a level 6 felony. Wyatt raises two issues which we revise and restate as follows:

I. Whether the evidence is sufficient to sustain his conviction; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

[2] On May 18, 2017, the trial court entered an ex parte order for protection, in favor of Natasha Wyatt and against her husband Joshua Wyatt, and the order prohibited Wyatt from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with Natasha. A sheriff's deputy served the protective order on Wyatt on August 11, 2017, read the order to him, and left him a copy.

[3] On August 27, 2017, Natasha drove her silver GMC Envoy to her cousin Jennifer's house and parked the vehicle on the street directly in front of the house. Wyatt knew that Natasha drove the GMC Envoy. While Natasha and Jennifer were on the couch in the living room, they heard a motorcycle and then Jennifer saw Wyatt come up to her porch. Wyatt yelled in a very loud and angry tone of voice for Natasha to exit the house. Wyatt walked away from the window, struck Natasha's vehicle leaving a dent, and then drove away on his

motorcycle. Natasha and Jennifer walked outside to the porch, and Natasha called the police. While Natasha and Jennifer were still on the porch, Wyatt drove back to the house and stopped his motorcycle on the street near Natasha's vehicle. His demeanor was "[p]retty angry," he screamed and called Natasha "whore" and "bitch," and asked "who are you sleeping with." *Id*. at 40. After one or two minutes, he began to drive away and nearly collided with a vehicle approaching from the other direction.

[4] On September 5, 2017, the State charged Wyatt with invasion of privacy as a level 6 felony under cause number 13D01-1709-F6-4876 ("Cause No. 4876"). The State subsequently filed petitions to revoke probation under cause number 03D01-1308-FD-4692 ("Cause No. 4692") alleging that Wyatt had been placed on probation for two years following his conviction for perjury and that he violated his probation by having charges filed against him for invasion of privacy under Cause No. 4876, by testing positive for methamphetamine and marijuana on May 18, 2017, and by being arrested for possession of methamphetamine on September 11, 2017. At Wyatt's jury trial, the prosecutor asked Natasha if she saw her husband Wyatt on August 27, 2017, and Natasha testified "I don't quite remember" and that she was in the laundry room. *Id*. at 50. When asked if there was a time she was in the living room with her cousin and someone came onto the porch, Natasha replied: "I was not in the living room, I was doing laundry, if that was what I was doing. I don't quite remember so I can't tell you, yes or no. It was eight months ago and a thousand other things have occurred." *Id*. Natasha agreed that she had called

the police and that, when the police responded, the police obtained a recorded statement from her. When asked about the recorded statement, Natasha stated "I mean, I may have over exaggerated a lot, I was just really upset at him, and being childish, which I have done a lot during our relationships." *Id*. at 53. A portion of Natasha's August 27, 2017 recorded statement to police was played for the jury, and in her statement she indicated that she had a protective order against him, it had been served on Wyatt two weeks earlier, he had violated the order twice, and that day he had visited her cousin's house, yelled at her to exit the house, punched her vehicle, "screaming, why are you doing this to me," and accused her of sleeping with another person. *Id*. at 57. Natasha acknowledged that the recording was of her voice and was the statement she gave to police after calling 911. She indicated that she had the protective order dismissed in January 2018 and that she had reconciled with Wyatt. When asked if she had told the truth to the police in August, Natasha replied "I mean not the whole truth, because I . . . most definitely was being childish and wanted him to be in trouble." *Id*. at 62. She indicated she had wanted Wyatt to go to jail, and when asked why she answered "[b]ecause he chose drugs and not being a good person over our family." *Id*. Natasha indicated that she pled guilty to false informing in 2008 or 2009. Portions of recorded phone calls between Wyatt and Natasha while Wyatt was in jail were played for the jury during which Wyatt encouraged Natasha not to testify against him. The recordings played for the jury included Wyatt stating "[y]ou ought to just not go. That would be the best thing," Natasha stating "[b]ut if I go in there . . . and be like I don't know what the f--k you are talking about. I don't remember

s--t," and Wyatt stating "tell them you f---ing lied man" and "[s]omone heard the motorcycle go by, but you didn't f---ing see nobody, f--k it. I don't know, figure it out. I love you." *Id*. at 104-106. The jury found Wyatt guilty of invasion of privacy as a class A misdemeanor, and he subsequently pled guilty to the enhancement of the offense as a level 6 felony.

On April 3, 2018, the court held a hearing at which Wyatt's probation officer testified that Wyatt was on probation under Cause No. 4692 at the time he committed the August 27, 2017 offense. The probation officer also testified that Wyatt tested positive for methamphetamine on March 18, 2017, and November 30, 2017. The court found that Wyatt violated the terms of his probation under Cause No. 4692 and indicated it would move on to sentencing and disposition. Wyatt stated:

> I just want to say uh that, I know it's . . . all this stuff, that I am in trouble for, is due to drug problems and I just now at thirty-seven years old, but uh I'm realizing that now. And uh, if I would get another chance I know, I know what I need to do. And get treatment at I.O.P. I know that and uh I want to be there for my family. Be, be the best ever. That's all I've got.

*Id*. at 147. The court found the aggravating circumstances included Wyatt's history of criminal behavior; the fact he had been placed on probation in the past and had his probation revoked; that he was on probation at the time of the offense; and the fact he had the opportunity for treatment in the past and was unsuccessful. The court found no mitigating circumstances. It sentenced Wyatt to two and one-half years for invasion of privacy as a level 6 felony

under Cause No. 4876 to be served consecutive to his sentence under Cause No. 4692, and ordered that he serve the balance of his previously-suspended sentence of two years in the Department of Correction under Cause No. 4692.

## Discussion

### I.

[6] The first issue is whether the evidence is insufficient to sustain Wyatt's conviction for invasion of privacy as a level 6 felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.* A conviction may be sustained on the uncorroborated testimony of a single witness or victim. *Lay v. State*, 933 N.E.2d 38, 42 (Ind. Ct. App. 2010), *trans. denied*.

[7] Ind. Code § 35-46-1-15.1 provided in part at the time of the offense that a person who knowingly or intentionally violates a protective order to prevent domestic or family violence or an ex parte protective order commits invasion of privacy as a class A misdemeanor and that the offense is a level 6 felony if the person has a prior unrelated conviction for an offense under the section. (Subsequently amended by Pub. L. No. 87-2018, § 3 (eff. July 1, 2018)).

[8]     Wyatt argues the evidence is insufficient to support his conviction for invasion of privacy "given Natasha Wyatt's unequivocal testimony that she made a false report." Appellant's Brief at 11. He argues that Natasha indicated that she did not recall the events in question, exaggerated because she was upset with him, and admitted that she had a conviction for false informing in 2009, which together shed considerable doubt on the events of August 27, 2017. The State argues that Jennifer testified as to Wyatt's actions, Wyatt's argument is nothing more than a request to reweigh the evidence, and the jury was not obligated to believe Natasha's attempt to recant her report to police.

[9]     The jury heard the testimony of Natasha's cousin Jennifer who observed Wyatt's actions on August 27, 2017. Jennifer testified that Wyatt arrived at her house, yelled in a very loud and angry tone, walked away from the window, struck Natasha's vehicle, and drove away. Jennifer further testified that, while she and Natasha were still on the porch, Wyatt returned, stopped his motorcycle on the street, screamed, and called Natasha "whore" and "bitch." Transcript Volume II at 40. In her August 27, 2017 statement to police, Natasha described Wyatt violating the protective order on that day. The State also played portions of recorded phone calls between Wyatt and Natasha during which Wyatt encouraged Natasha not to testify against him.

[10]    Wyatt's argument constitutes a request for this Court to reweigh the evidence, which we will not do. *See Jordan*, 656 N.E.2d at 817. Based upon the record, including Jennifer's testimony and the recordings, we conclude the State presented evidence of a probative nature from which the jury could find beyond

a reasonable doubt that Wyatt committed the offense of invasion of privacy as a level 6 felony.

## II.

The next issue is whether Wyatt's sentence is inappropriate in light of the nature of his offense and character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Wyatt maintains the court should have considered Natasha's testimony that she made a false report, dismissed the protective order, and reconciled with him, and his statement at sentencing, and he argues that, "[b]ecause these factors were not considered by the trial court, . . . his sentence is inappropriate." Appellant's Brief at 17. The State argues that Wyatt tracked Natasha down two weeks after being served with the protective order, yelled at her, and returned a second time and called her names. It also argues that Wyatt has a lengthy criminal history which includes fourteen prior misdemeanors, four prior felonies, and twenty probation violations and that "[h]is attempt to absent the victim from his trial only further highlights his poor character." Appellee's Brief at 18.

[13] Our review of the nature of the offense reveals that, sixteen days after he was served with a protective order prohibiting him from contacting Natasha, Wyatt drove to the house where Natasha was located and yelled for her to exit the house. Wyatt punched Natasha's vehicle, drove away on his motorcycle, and then returned to the house, screamed, and called Natasha names.

[14] Our review of the character of the offender reveals that, while in jail, Wyatt spoke with Natasha and encouraged her not to testify against him. The presentence investigation report ("PSI") reveals Wyatt has a lengthy criminal history beginning in 1999 which includes speed contest, battery, driving while suspended, illegal consumption, public intoxication, OMVUI, resisting law enforcement, and false informing as misdemeanors as well as OMVUI as a class D felony in 2003, intimidation as a class D felony and invasion of privacy as a class A misdemeanor in 2007, false informing as a class B misdemeanor in 2009, disorderly conduct as a class B misdemeanor and intimidation as a class A misdemeanor in 2011, invasion of privacy as a class D felony in 2013, and perjury as a class D felony in 2013 under Cause No. 4692. The PSI also reveals that Wyatt has violated his probation numerous times. The court at sentencing stated that Wyatt's criminal history is "horrible." Transcript Volume II at 157. The court also stated that it found this case very disturbing because there were questions regarding truthfulness with the court and the process.

After due consideration, we conclude that Wyatt has not sustained his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.[1]

## *Conclusion*

For the foregoing reasons, we affirm Wyatt's conviction and sentence.

Affirmed.

Bailey, J., and Bradford, J., concur.

---

[1] To the extent Wyatt argues the court abused its discretion in sentencing him by failing to consider Natasha's testimony that she made a false report, the dismissal of the protective order and Natasha and Wyatt's reconciliation, and Wyatt's statement at sentencing, we need not address this issue because we find that his sentence is not inappropriate. *See Chappell v. State*, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012) (noting that any error in failing to consider the defendant's guilty plea as a mitigating factor is harmless if the sentence is not inappropriate) (citing *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007) (holding that, in the absence of a proper sentencing order, Indiana appellate courts may either remand for resentencing or exercise their authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), *reh'g denied*; *Mendoza v. State*, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (noting that, "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate"), *trans. denied*), *trans. denied*.