Isaiah ALVIES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0808–CR–710.

Court of Appeals of Indiana.

April 30, 2009.

Matthew D. Anglemeyer, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Isaiah Alvies (Alvies), appeals following his convictions and sentence for murder, a felony, Ind.Code § 35–42–1–1, rape, as a Class A felony, Ind.Code § 35–42–4–1, criminal confinement, as a Class B felony, Ind.Code § 35–42–3–3, burglary, as a Class B felony, Ind. Code § 35–43–2–1, and auto theft, as a Class D felony, Ind.Code § 35–43–4–2.5.

We affirm.

### ISSUES

Alvies presents six issues for our review, which we restate as:

(1) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that Alvies committed murder;

(2) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that Alvies committed auto theft;

(3) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that Alvies was armed with a deadly weapon when he committed rape and criminal confinement;

(4) Whether, given his 110–year sentence, Alvies was entitled to be sentenced in accordance with Indiana's life without parole sentencing statute;

(5) Whether the trial court abused its discretion by identifying Alvies' record of juvenile delinquency adjudications as an aggravating circumstance; and

(6) Whether Alvies' sentence is inappropriate.

### FACTS AND PROCEDURAL HISTORY

The following is the evidence most favorable to Alvies' convictions. In the early morning hours of August 3, 2006, Alvies, who was seventeen at the time, along with Antoine Greer (Greer), Steve Hardin (Hardin), and Andre Gaston (Gaston), approached the apartment of Debra Buchanan (Buchanan), a forty-four-year-old Indianapolis woman, and knocked on the door. Buchanan answered, and Greer asked to use the phone. When Buchanan, who did not know the males, turned around to get her phone, Greer pulled a gun and said, "Search the crib. Search this b* * * *." (Exhibits p. 287). Eventually, the group took Buchanan's car keys and forced her out to her car. Buchanan had no shoes on and was wearing only a nightgown. According to Alvies, Greer said, "I ain't goin' down for another robbery." (Ex. p. 287).

Greer wanted to put Buchanan in the trunk of the car, but Buchanan said that the trunk would not open. Alvies suggested putting Buchanan in the front seat. With Buchanan in the passenger seat and Alvies, Hardin, and Gaston in the back seat, Greer drove to a wooded area on Indianapolis' near northeast side. The males took Buchanan out of the car and forced her down a path into the woods. As Buchanan cried, Hardin and Alvies each raped her. Buchanan was then shot and killed as she begged for her life. Alvies and the others left the scene in Buchanan's car.

In the following days, Alvies had the murder weapon, and he told his father that he was the one who had killed Buchanan. Alvies' father wanted Alvies to turn himself in, but Alvies ran away from home. On February 22, 2007, Alvies was brought in on an unrelated case, and police questioned him about Buchanan's murder. He initially denied any involvement in the crimes against Buchanan, but he eventually gave a statement detailing the above facts. His statement was ambiguous with regard to who had shot Buchanan. He first said that "everybody shot" and that he "had something to do with everything." (Ex. pp. 281, 283). Later, he said that Greer "let off the shots" but that "we all had somethin[g] to do with it[.]" (Ex. p. 291). He admitted telling his father that he had killed Buchanan, but he said he had made that up in order to protect Greer. (Ex. p. 298).

On February 28, 2007, the State filed an Information charging Alvies with: Count I, murder, a felony, I.C. § 35–42–1–1; Count II, felony murder, I.C. § 35–42–1–1; Count III, rape, as a Class A felony, I.C. § 35–42–4–1; Count IV, criminal confinement, as a Class B felony, I.C. § 35–42–3–3; Count V, burglary, as a Class A felony, I.C. § 35–43–2–1; and Count VI, auto theft, as a Class D felony, I.C. § 35–43–4–2.5. A jury trial was held from June 23–25, 2008, and the jury found Alvies guilty as charged on all six counts. Due to double jeopardy concerns, the trial court only entered judgments of conviction on Counts I, III, IV, and VI as charged and on Count V as a Class B felony.

On July 9, 2008, the trial court held a sentencing hearing. The trial court found Alvies' young age at the time of the crimes to be a mitigating factor but gave it "very minimal weight," citing the purposeful nature of Alvies' participation. (Transcript p. 616). The trial court also found as a mitigating factor the hardship that would be imposed on the two young children Alvies claimed to have, but gave this mitigator "minimal weight," noting that Alvies had failed to present any evidence, other than his own testimony, that he is a father. (Tr. pp. 616–17). The trial court also identified three aggravating factors: Alvies' criminal history, consisting of five juvenile adjudications; the fact that Alvies was on suspended commitment for one of his juvenile adjudications at the time of the crimes; and the nature and circumstances of the crimes, which the court found to be a "very aggravating circumstance." (Tr. pp. 619–20).

Finding that the aggravating factors outweighed the mitigating factors, the trial court imposed consecutive sentences of sixty years for the murder, forty years for the rape, and ten years for the criminal confinement, for a total executed sentence of 110 years. The trial court also imposed sentences of ten years for the burglary and one-and-a-half years for the auto theft, with the sentences to run concurrently with each other and with the other sentences.

Alvies now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

■ Alvies first argues that the State presented insufficient evidence to prove beyond a reasonable doubt that he committed murder and auto theft or that he was armed with a deadly weapon when he committed rape and criminal confinement. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212–13 (Ind.Ct.App.2007), *trans. denied.* We will consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

■ Because several people were involved in the crimes against Buchanan, the jury was instructed on accomplice liability. In Indiana, an accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence of their concerted action. *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998). The accomplice need not participate in each and every element of the crime to be convicted of it. *See id.* While mere presence at the scene of the crime is insufficient to establish accomplice liability, presence may be considered along with the defendant's relation to the one engaged in the crime and the defendant's actions before, during, and after the commission of the crime. *Id.*

### A. *Murder*

■ Alvies contends that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he committed murder. We disagree. In his statement to police, which was admitted into evidence at trial, Alvies said that "everybody shot" and that he had told his father that he had killed Buchanan. (Ex. pp. 281, 298). Even if the jury did not believe this, there was ample evidence to support a finding that Alvies was an accomplice to the murder. During his statement to police, Alvies said that Greer "let off the shots" but that "we all had somethin[g] to do with it[.]" (Ex. p. 291). He also stated, "I had something to do with everything." (Ex. p. 283). Alvies contradicted himself several times during his statement, but it was up to the jury to decide which story to believe. *See, e.g., In re J.L.T.*, 712 N.E.2d 7, 11 (Ind.Ct.App. 1999) ("Not only must the fact-finder determine whom to believe, but also what portions of conflicting testimony to believe."), *reh'g denied, trans. denied.* In any event, Alvies was involved in entering Buchanan's apartment in the middle of the night with a gun, taking her out of her apartment, driving her away in her own car, forcing her into the woods, and raping her. Buchanan's murder was a probable and natural consequence of this concerted action. *See McGee*, 699 N.E.2d at 265. Moreover, Alvies was in possession of the murder weapon in the following days. The State presented sufficient evidence to allow the jury to find Alvies guilty of Buchanan's murder, either as the killer or as an accomplice.[1]

---

1. Alvies asserts that, given the fact that he was only seventeen at the time of the crimes, his murder conviction cannot stand under the United States Supreme Court's opinion in *Roper v. Simmons*, 543 U.S. 551, 578, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), where the Court held that the execution of individuals who were under eighteen at the time of their capital crimes is unconstitutional. The Court did not hold that a person under eighteen

## B. *Auto Theft*

■ Alvies also argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he committed auto theft. He focuses on the fact that there is no direct evidence that he was ever behind the wheel of Buchanan's car. But it is undisputed that he took part in the initial burglary, that he rode in the car on the way to the woods, that he raped Buchanan after the car was taken, and that he was in the car when it left the scene of the murder. This evidence is sufficient to allow a reasonable jury to conclude that Alvies was at least an accomplice to the theft of Buchanan's car.

## C. *Rape and Criminal Confinement*

■ Next, Alvies challenges his convictions for rape and criminal confinement. He does not argue that we should vacate those convictions, only that we should reduce them to lesser felonies. Rape is generally a Class B felony, but Alvies was charged with and convicted of a Class A felony based on the allegation that he was armed with a deadly weapon. *See* I.C. § 35–42–4–1; *see also* Appellant's App. p. 50. Likewise, criminal confinement is generally a Class D felony, but Alvies was charged with and convicted of a Class B felony based on the same allegation. *See* I.C. § 35–42–3–3; *see also* Appellant's App. p. 50.

■ Alvies contends that his convictions should be reduced because "no direct evidence suggests that Buchanan was taken to the isolated area at gunpoint or raped at gunpoint[.]" (Appellant's Br. p. 19). But there is no requirement that the State present evidence, direct or otherwise, that shows that the deadly weapon was held on the victim at all times. *See Forrester v. State*, 440 N.E.2d 475, 485 (Ind.1982).

Rather, our supreme court has held that an initial show of deadly force and the victim's awareness of the defendant's continued constructive possession of the weapon are sufficient to satisfy the "armed with a deadly weapon" element. *See Potter v. State*, 684 N.E.2d 1127, 1137 (Ind.1997); *Davis v. State*, 520 N.E.2d 1271, 1274 (Ind. 1988), *reh'g denied.* Here, the State presented evidence that the gun was pulled right after Buchanan first opened the door, and the fact that Buchanan was killed with a gun at the end of the ordeal was sufficient to allow the jury to conclude that Alvies and the other defendants had at least constructive possession of the gun at all times. We conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that the rape and criminal confinement were committed while Alvies and his co-perpetrators were armed with a deadly weapon.

## II. *Sentencing*

Alvies asserts that, even if he was properly convicted, he was improperly sentenced. He argues that (1) because he was sentenced to 110 years, he was entitled to the procedural protections of Indiana's life without parole statute, (2) the trial court abused its discretion by relying on Alvies' criminal history as an aggravating circumstance, and (3) his sentence is inappropriate in light of the nature of his offenses and his character.

### A. *Applicability of Life Without Parole Statute*

■ Alvies urges that his 110–year sentence is essentially a life sentence and that "[f]undamental fairness dictates [he] should receive the procedural protections of the life without parole statute." (Appellant's App. p. 15). He quotes at length from the life without parole statute,

---

cannot be convicted of murder. *Roper* is in- apposite to the case at bar.

Indiana Code section 35–50–2–9, but he does not cite a single case discussing the "fundamental fairness" doctrine. Moreover, Alvies could, by behaving and pursuing educational opportunities, end up serving less than half of his total sentence and being released before he turns seventy. That is a long time, but it is not the same as life without parole. Alvies has failed to convince us that he was entitled to the protections of the life without parole statute.

### B. *Criminal History Aggravator*

■ Next, Alvies asserts that the trial court abused its discretion by identifying his criminal history as an aggravating circumstance. The extent, if any, that a sentence should be enhanced based on prior convictions turns on the weight of an individual's criminal history. *Duncan v. State,* 857 N.E.2d 955, 959 (Ind.2006). This weight is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on the defendant's culpability. *Id.*

In *Duncan,* the defendant was convicted of felony murder after giving methadone to a two-year-old child who was in her care. One aggravating factor identified by the trial court in sentencing Duncan was Duncan's criminal history, which consisted of a felony conviction for disrupting public services and misdemeanor convictions for driving under the influence and contributing to the delinquency of a minor. On appeal, our supreme court held that Duncan's prior convictions "were neither sufficiently weighty or similar to the current offense to justify enhancing the sentence." *Id.* at 960.

In *Prickett v. State,* 856 N.E.2d 1203 (Ind.2006), decided on the same day as *Duncan,* Prickett was convicted of child molesting as a Class A felony. The trial court identified as an aggravating factor Prickett's criminal history, which consisted of juvenile adjudications for incorrigibility, burglary, and theft, and adult misdemeanor convictions for illegal consumption of alcohol as a minor, mischief, and conversion. On appeal, our supreme court concluded, "Prickett's prior criminal history was neither sufficiently similar to the instant offense nor weighty enough to warrant consideration as an aggravating factor in enhancing his Class A felony sentence." *Id.* at 1209.

Finally, in *Howell v. State,* 859 N.E.2d 677 (Ind.Ct.App.2006), *trans. denied,* Howell pled guilty to reckless homicide, a Class C felony, after suffocating a child while the child was overmedicated and the two were sleeping on a couch. The trial court identified Howell's criminal history as an aggravating circumstance. That history consisted of five misdemeanor convictions: two convictions for operating a vehicle having never received a license, two convictions for failure to stop after an accident, and a conviction for conversion. On appeal, we held:

> Howell's prior misdemeanor convictions are not sufficiently weighty or similar to the current offense to justify enhancing the sentence. The prior convictions are of a different character than the instant offense and do not approach the seriousness of this offense. Consequently, the trial court abused its discretion by using Howell's criminal history as an aggravating factor.

*Id.* at 686.

■ Alvies' criminal history consists of five juvenile adjudications: battery as a Class B misdemeanor in 2004; disorderly conduct as a Class B misdemeanor, resisting law enforcement as a Class A misdemeanor, and auto theft as a Class D felony in 2005; and criminal trespass as a Class

A misdemeanor in 2006. Alvies contends that the trial court should not have relied upon this juvenile record as an aggravating circumstance because those adjudications are "quite dissimilar" from his present offenses and do "not even approach[ ] the seriousness" of his present offenses. (Appellant's Br. p. 23). The State offers no meaningful response. We agree with Alvies.

To be sure, the juvenile adjudications for criminal trespass, battery, and auto theft show some connection between Alvies' past transgressions and his current crimes. But, at the end of the day, Alvies' juvenile record pales in comparison to the instant convictions. Murder and rape are on a different level than Alvies' prior offenses. Just as our supreme court did in *Duncan* and *Prickett*, and just as we did in *Howell*, we conclude that the trial court abused its discretion by relying upon Alvies' record of juvenile adjudications as an aggravating circumstance.

 When a trial court abuses its discretion in finding an aggravating circumstance, we will nonetheless affirm the sentence if we can say with confidence that the trial court would have imposed the same sentence even if it had not considered the improper aggravator. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). Here, Alvies does not challenge the other two aggravators identified by the trial court—the fact that Alvies was on suspended commitment for his 2006 criminal trespass adjudication when he committed the instant crimes, and the nature and circumstances of the crimes. The trial court's comments at the sentencing hearing make clear that the overriding factor in its sentencing decision was the nature and circumstances of the crimes. Therefore, we can say with confidence that the trial court would have imposed the same sentence even if it had not considered Alvies' juvenile record as an aggravating circumstance.

## C. *Appropriateness*

 Finally, Alvies argues that his sentence is inappropriate. Even if a defendant's sentence is otherwise proper, Article VII, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Anglemyer*, 868 N.E.2d at 491. This appellate authority is implemented through Indiana Appellate Rule 7(B), which permits us to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id.* The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Alvies has not met this burden.

Alvies contends that "[h]e will be unable to care for and support the children who are possibly his or interact meaningfully with other members of his family." (Appellant's Br. p. 23) (citation omitted). We make several observations. First, other than his own testimony, Alvies presented no evidence that he actually has two children or that he was doing anything to support them at the time of his crimes. Moreover, even if Alvies had gotten the minimum sentence of forty-five years on the murder charge, any children he has now would likely be adults by the time he would be released. As for losing the opportunity to have meaningful interaction with the rest of his family, that is one of the unfortunate consequences of participating in a rape and murder.

But, for us, as with the trial court, the primary consideration is the nature and circumstances of the crimes. In the mid-

dle of the night, Alvies and his three confederates went to the door of a complete stranger, Buchanan, and asked if they could use her phone. When Buchanan turned to retrieve her phone, Greer pulled a gun, and the group entered her house in search of things to take. They forced Buchanan, shoeless and dressed only in a nightgown, out of her apartment and drove her away in her own car. They took her to a secluded, wooded area, where Alvies and Hardin raped her. As she cried and begged for her life, they shot her and left her for dead. This was the sort of crime that makes people afraid to open their doors. Alvies has not convinced us that his sentence is inappropriate.

### CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to support Alvies' convictions and that, but for one bad aggravator, the trial court properly sentenced Alvies. Because we can say with confidence that the trial court would have imposed the same sentence even if it had not considered the improper aggravator, we need not remand for re-sentencing. Finally, Alvies' sentence is not otherwise inappropriate.

Affirmed.

DARDEN, J., concurs.

VAIDIK, J., concurs in result.