**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 15 2013, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL E. BOONSTRA**
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JESSE L. ROSE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 09A05-1205-CR-251 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Richard A. Maughmer, Judge
Cause No. 09D02-0911-FA-13

**February 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant Jesse L. Rose was convicted of multiple counts of molesting K.S., his stepdaughter, over a period of two years when she was less than twelve years old. Rose, who met K.S.'s mother while she was pregnant with K.S., was the only father that K.S. ever knew.

Rose argues that the evidence was insufficient to convict him of four counts of class A felony Child Molesting.[1] Rose also challenges the 200-year sentence that was imposed, maintaining that it is inappropriate in light of the nature of the offenses and his character.

K.S.'s testimony is filled with descriptions of sexual abuse that no child should suffer, especially when the person inflicting the abuse is someone the child trusts and to whom the child looks to for protection. Furthermore, Rose's criminal history paints a picture of an individual who refuses to conform his behavior to the law and the demands of society. Indeed, Rose did not stop sexually abusing his stepdaughter until he was caught by his pregnant wife. Consequently, we affirm Rose's four convictions for class A felony child molesting and do not find his 200-year sentence inappropriate in light of the nature of the offenses and his character. Accordingly, we affirm the decision of the trial court.

---

[1] Ind. Code § 35-42-4-3.

FACTS

Rose met Lisa, K.S.'s mother, when she was pregnant with K.S., and they married shortly after the child's birth on October 15, 1998. Following K.S.'s birth, Rose and Lisa had five more children, the youngest of whom was born sometime after November 2009.

Sometime in 2007, when K.S. was in the third or fourth grade, the family moved into a house located in Cass County. On one occasion, while K.S. was playing in an upstairs bedroom, Rose came into the room, removed his and K.S.'s clothes, and forced K.S. to engage in sexual intercourse with him. K.S. did not tell anyone what had happened because Rose "always told [her] that [she] would be the one to get in trouble for it. [She'd] be in a lot of trouble." Tr. p. 81.

Sometime during the summer of 2008 while K.S. was reading a book in a bedroom, Rose entered the room and told K.S. to get down on her knees. Rose got down on the floor behind K.S., removed both of their pants, and started to put his penis into her "butt." Tr. p. 68. K.S. began to cry because she was in pain and asked Rose to "please stop." Id. When Rose finally stopped, K.S. pulled up her pants and went outside. K.S. did not tell anyone of the incident "so [she] didn't get in trouble." Id. at 69.

In mid-November 2009, K.S. was watching television in the bedroom that her mother shared with Rose. Rose came into the bedroom and told K.S. to get up on the bed. After Rose removed K.S.'s pants and underpants, and while he was attempting to remove his own, K.S. tried to scoot away from him. Rose forced K.S. to engage in sexual intercourse with him as K.S. continued to move away from Rose, falling off the

3

bed in the process. Rose began to get down onto the floor, but K.S. told him that she had to use the bathroom. K.S. then gathered her clothes, went into the bathroom and got dressed.

During the early morning hours of November 21, 2009, Lisa drove Rose to a local bar. Afterward, K.S. and Lisa watched a movie in Lisa's bedroom, and they both fell asleep. At some point, K.S. woke up when Rose shook her, and she went into the bedroom that she shared with her brothers and sisters; however, the other children were not in the bedroom at the time. Rose followed K.S. into the empty bedroom and sat on the bottom bunk bed. K.S. was tired and lying on the floor. Rose looked down at K.S. and then went back to the bedroom that he shared with Lisa. A short time later, Rose reentered K.S.'s bedroom and was no longer wearing his shirt. Rose took off his pants and got on the floor beside K.S., who tried to keep her pants on as Rose attempted to remove them. K.S. scooted towards the dresser as Rose removed his underpants, got on top of K.S., and engaged in sexual intercourse with her. As Rose continued, K.S. scooted towards the door and managed to scoot halfway out the door before Rose pulled her back into the room and closed the door so that it was just barely open.

At this point, K.S. heard her mother's door opening and her footsteps in the hallway. Rose jumped into the bottom bunk bed. Lisa, who was pregnant, heard "thuds" and then the rustling sound of the plastic mattress on one of the children's bunk beds. Tr. p. 204-05. K.S. was still by the door when her mother entered the room and turned on the light. K.S. was sitting so close to the door that her mother almost hit her with it when she

4

entered the room. K.S. wore a shirt and had a blanket covering her from the waist down. Lisa went to where Rose was lying on the bottom bunk and asked him, "what the hell are you doing?" Id. at 208. Rose replied that he was "resting." Id. Rose was fully covered with a sheet from the neck down. When Rose did not get out of the children's bed, Lisa pulled the sheet from him and discovered that he was naked. Lisa yelled at Rose and told him to go back to her room. She then took the blanket away from K.S., asked why K.S. was not wearing any bottoms, and told K.S. to put on some clothes. Later that evening when K.S. and her mother were alone in the car, K.S. told her what had happened earlier and on previous occasions.

Logansport police officers met with Lisa, who said that she suspected that Rose had had sexual intercourse with K.S. earlier that day. At the scene, police officers collected a pair of white Hanes girls' underpants that Lisa identified as belonging to K.S. K.S. was transported to Riley Hospital for Children, where she had an examination, including a sexual assault kit.

Logansport police eventually located Rose at a local motel and transported him to the Logansport Police Department. Police officers later served a search warrant on Rose and obtained a cheek swab from him. A DNA analysis taken from a cutting of K.S.'s underpants showed the presence of a major and minor profile and revealed that in the absence of an identical twin, Rose was the source of the major DNA profile to a reasonable degree of scientific certainty.

On February 22, 2012, the State charged Rose with four counts of class A felony child molesting and three counts of class D felony neglect of a dependent. Rose's two-day jury trial was conducted on February 29 and March 1, 2012. At the close of the State's evidence, the trial court granted a directed verdict on the three counts of neglect of a dependent; however, the jury returned a guilty verdict on all four counts of class A felony child molesting.

On April 16, 2012, the trial court conducted a sentencing hearing. The trial court entered a judgment of conviction on the jury verdicts and sentenced Rose to fifty years on each count to be served consecutively in the Indiana Department of Correction (DOC), for an aggregate term of 200 years. In sentencing Rose, the trial court found his difficult childhood, the deprivation of educational opportunities, and his mental health to be mitigating circumstances. In aggravation, the trial court observed Rose's substantial criminal history, his violation of a position of trust, his failure at rehabilitation despite being afforded numerous opportunities, the violation of his probation, and his high risk to reoffend. Rose now appeals his convictions and the 200-year sentence that was imposed.

DISCUSSION AND DECISION

Rose makes two arguments on appeal. More particularly, Rose maintains that the evidence was insufficient to sustain his convictions on Counts II, III, and IV,[2] claiming that the evidence presented related only to Count I. Rose also challenges the 200-year sentence under Indiana Appellate Rule 7(B), pointing to his intoxication at the time of the

---

[2] Rose does not seem to challenge his conviction on Count I, alleging class A felony child molesting as it pertained to the November 21, 2009 incident.

molestations, the lack of injury or force, and the fact that he has not molested another child.

## I. Sufficiency of the Evidence

The standard of review for sufficiency claims is well settled; this Court will neither reweigh the evidence nor judge the credibility of witnesses. Jackson v. State, 925 N.E.2d 369, 375 (Ind. 2010). Rather, we will consider only the evidence favorable to the trial court's verdict and all reasonable inferences therefrom. Alvies v. State, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009). We will not reverse for insufficient evidence unless no rational fact finder could have found the defendant guilty beyond a reasonable doubt. Clark v. State, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).

As an initial matter, we note that Rose has failed to cite to the record and to any relevant legal authority in this section of his argument. Appellant's Br. p. 8-9. Because Rose has failed to develop a cogent argument supported by legal authority or citation to the record, his sufficiency claim is waived. See Blanche v. State, 690 N.E.2d 709, 712 (Ind. 1998) (finding waiver where appellant failed to make a cogent argument).

Waiver notwithstanding, there is sufficient evidence to support Rose's convictions on Counts II, III, and IV. To convict Rose of class A felony child molesting, the State was required to prove beyond a reasonable doubt that Rose: (1) being at least twenty-one years of age; (2) performed or submitted to sexual intercourse or deviate sexual conduct; (3) with a child under fourteen years of age. Ind. Code § 35-42-4-3(a)(1). "Deviate

sexual conduct" is defined in relevant part as an act involving a sex organ of one person and the mouth or anus of another person. Ind. Code § 35-31.5-2-94.

At the outset, it is undisputed that Rose was older than twenty-one years and that K.S. was younger than fourteen years during the relevant time period when the molestations occurred. Appellant's App. p. 145. Regarding Count II, which alleged that sometime between September 1, 2009, and November 20, 2009, Rose engaged in sexual intercourse with K.S, the young victim testified that she was in her mom's room watching television when Rose entered and sat on the bed. Tr. p. 63. Rose told her to get on the bed, and he joined her and tried to take off K.S.'s pants. Id. at 63-64. Rose succeeded in removing K.S.'s pants and underpants, and while he was removing his own, K.S. began scooting away from him. Id. at 64. Rose removed his underpants and engaged in sexual intercourse with K.S.; however, this did not deter K.S. from attempting to escape him as she continued to scoot away during the sexual assault. Id. Indeed, K.S. continued scooting until she "fell on the floor." Id. Accordingly, in light of this testimony, we cannot say that there was insufficient evidence to sustain Rose's conviction on Count II.

Moving forward, Count III alleged that Rose engaged in sexual deviate conduct with K.S. when he "placed his penis in the anus of K.S." Appellant's App. p. 145. K.S. testified that during the summer of 2008, she was reading a book in an upstairs bedroom when Rose entered and told her to get down on her knees. Tr. p. 67. Rose got down on the floor behind K.S., removed their pants, and began to place his penis into her "butt." Id. at 68. K.S. began to cry because she was in pain and asked Rose to "please stop." Id.

8

When Rose finally stopped, K.S. pulled up her pants and went outside. Id. at 69. K.S. chose not to tell anyone about the incident "so [she] didn't get in trouble." Id. Under these facts and circumstances, we find sufficient evidence to sustain Rose's conviction on Count III.

Like Count II, Count IV alleged that Rose engaged in sexual intercourse with K.S., sometime in 2009. Appellant's App. p. 145. More particularly, K.S. was playing in an upstairs bedroom when Rose came in, removed his and K.S.'s clothes, and forced K.S. to engage in sexual intercourse with him. Tr. p. 79-80. K.S. did not tell anyone what had happened because Rose "always told [her] that [she] would be the one to get in trouble for it. [She'd] be in a lot of trouble." Id. at 80-81. In light of this evidence, we cannot say that insufficient evidence supported Rose's conviction on Count IV.

Moreover, although Rose does not challenge his conviction on Count I, we observe that the evidence pertaining to Count I is consistent with the evidence supporting the remaining three counts. Specifically, although Count I pertained to a separate incident, the molestation occurred in a very similar manner as the previous molestations. Rose woke up K.S. and told her to go to the children's room where he eventually removed his and K.S.'s pants. Tr. p. 49. Rose then got on top of K.S. and engaged in sexual intercourse with her as she scooted away, trying to escape, until Rose pulled her back into the room. Id. at 50. Moreover, DNA from the November 21, 2009 incident indicated that Rose was the source of the major DNA profile to a reasonable degree of scientific certainty. Id. at 328-29. Consequently, there was sufficient evidence to convict

9

Rose of four counts of class A child molesting, and we decline his invitation to reweigh the evidence or reassess the credibility of the witnesses.

## II. Inappropriate Sentence

Although Rose spends some time arguing that there was insufficient evidence to support his convictions, the real gravamen of his appeal is that his sentence is essentially a life sentence and requests that this Court review and revise this sentence pursuant to Rule 7(B). Article 7, Section 4 of the Indiana Constitution grants this Court the authority to review and revise a trial court's sentence in all criminal cases. This authority is implemented through Indiana Appellate Rule 7(B), which provides that we will revise a sentence if, after due consideration of the trial court's decision, we are convinced that the sentence is inappropriate in light of the nature of the offenses and the character of the offender.

Here, Rose received consecutive fifty-year sentences for each of his four convictions for class A felony child molesting, for an aggregate sentence of 200 years. The sentencing range for a class A felony is twenty to fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4. Thus, on each of the four convictions, Rose was sentenced to the maximum term.

As for the nature of the offenses, Rose required his stepdaughter, K.S., to endure multiple acts of sexual intercourse and deviate sexual conduct over a two-year period before she was even twelve years old. These repeated molestations occurred in K.S.'s home, where she was entitled to feel safe. Furthermore, it cannot be disputed that Rose

10

violated a position of trust, insofar as he had the care and custody of K.S. from infancy. Indeed, Rose met Lisa when she was pregnant with K.S. Tr. p. 194.

Moreover, during the molestations, K.S. repeatedly tried to get away from Rose by scooting away from him and on one occasion, K.S. actually fell off the bed as she attempted to free herself. Rose also manipulated K.S. by convincing her that she would get in trouble if she reported the abuse. As stated above, this pattern continued for a couple of years, and it seems apparent that it would have continued if Rose had not been caught by his pregnant wife.

Regarding the nature of his actions, Rose points out that, "[h]ere, the actual harm was emotion based on what was in evidence at sentencing. . . . there is no evidence that his conduct caused her any physical harm." Appellant's Br. p. 12. To be sure, K.S. has suffered emotional trauma as the result of Rose's ongoing sexual abuse, stating in a letter read at Rose's sentencing that "[e]ven now when I know he is locked up the nighmares keep me from sleeping." Sentencing Tr. p. 5-6. It is perplexing as to why Rose argues and almost assumes that we should elevate physical harm over emotional and mental harm. We decline to do so. Consequently, the nature of the offenses does not assist Rose in his inappropriateness argument.

As for Rose's character, his criminal history is extensive. Beginning at the age of fifteen, Rose was adjudicated a juvenile delinquent for what would have been burglary if committed by an adult. Rose was later waived into adult court on nine counts of theft, which resulted in his first adult conviction for attempted theft when he was seventeen.

11

Appellant's App. 131-36. From there, Rose committed numerous criminal acts, leading to eleven felony convictions and eighteen misdemeanor convictions, including resisting law enforcement, felony battery on a police officer, felony battery, felony criminal recklessness, firearms violations, and several convictions for conversion and operating a vehicle while intoxicated. Id.

Despite numerous contacts with the criminal justice system and attempts at rehabilitation, including being placed on probation, parole, and serving executed sentences, Rose has continued down a criminal path and has shown disdain for the law. And while Rose highlights the fact that he has been diagnosed with a "severe psychiatric illness for which lifelong treatment is indicated," appellant's app. p. 123, we note that his mental illness was afforded mitigating weight at sentencing. Sent. Tr. p. 21-22. As for the appropriateness of his sentence, he fails to show a nexus between his illness and his offenses sufficient to convince us that his sentence is inappropriate. See Thomas-Collins v. State, 868 N.E.2d 557, 561 (Ind. Ct. App. 2007) (concluding that the trial court does not abuse its discretion when it does not find mental illness to be a mitigating circumstance when the defendant fails to establish a nexus between his mental illness and the crime in question). While our jurisprudence on this subject has involved an analysis under the abuse of discretion standard, requiring a defendant who seeks a sentence revision under Rule 7(B) to show a nexus between his mental illness and his crimes does not seem overly burdensome, especially when it is the defendant who must convince the court that his sentence is inappropriate. See Childress v. State, 848 N.E.2d 1073, 1080

12

(Ind. 2006) (opining that the burden is on the defendant to persuade us that his sentence is inappropriate).

In short, Rose points out that the maximum sentence is generally reserved for the worst offenders.  Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007).  Again, over an extended period of time, Rose violated his stepdaughter in one of the worst ways imaginable, sometimes while the child would try to escape him.  It is apparent that Rose had no intention on ending the abuse until he was caught.  These facts along with his extensive criminal record places him squarely in this category.  Thus, we decline Rose's invitation to revise his sentence.

The judgment of the trial court is affirmed.

BARNES, J., concurs.

RILEY, J., concurs in part, dissents in part with opinion.

## IN THE
## COURT OF APPEALS OF INDIANA

JESSE L. ROSE,                                )
                                              )
    Appellant-Defendnat,            )
                                              )
        vs.                  )    No. 09A05-1205-CR-251
                                              )
                                              )
STATE OF INDIANA,                             )
                                              )
    Appellee-Plaintiff.             )

**RILEY, Judge, concurring in part and dissenting in part**

While I concur with the majority's decision that the evidence was sufficient to support Rose's conviction on four Counts of Class A felony child molesting, I respectfully dissent from the majority's conclusion affirming the trial court's imposition of a 200-year sentence. As noted, pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Under the circumstances before me, I conclude that Rose's sentence is inappropriate.

14

Although I abhor Rose's actions, I find that his character does not warrant the imposition of four consecutive fifty year sentences. While I agree with the majority that Rose is one of the worst offenders, his 200-year sentence practically amounts to a life sentence. Rose's criminal history is undisputably lengthy, including eleven prior felonies and eighteen prior misdemeanor convictions. However, most of these offenses are property-related violations, public intoxication, or resisting arrest; the instant conviction is his first child molesting charge. I would revise Rose's sentence to fifty years on each Count of child molesting, with the sentences to run concurrent. I do not believe that a concurrent sentence diminishes the gravity of his actions or their impact on his minor victim as he would still receive the maximum sentence allowed under the statute for each Count.