# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 14 2019, 9:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert G. Bottorff II
Bob Bottorff Law PC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.S., *Appellant-Respondent,* | January 14, 2019 |
| | Court of Appeals Case No. 17A-JV-3035 |
| *v.* | Appeal from the Clark Circuit Court |
| State of Indiana, *Appellee-Petitioner.* | The Hon. Vicki L. Carmichael, Judge |
| | Trial Court Cause No. 10C04-1708-JD-204 |

**Bradford, Judge.**

# Case Summary

[1] On two separate occasions in the summer of 2017, T.S., J.C., and B.S., invited young women to spend time with them. The first time, T.S. and J.C. confined a girl named A.M. in a truck before B.S. raped her. The second time, a girl named K.G., who knew and trusted T.S., was lured to B.S.'s house, where B.S., J.C., and T.S. confined and raped her in turn. The State alleged that T.S. committed (if committed by an adult) Level 3 felony aiding, inducing, or causing the rape of A.M.; Level 6 felony criminal confinement of A.M.; Level 6 felony aiding, inducing, or causing the criminal confinement of A.M.; Level 3 felony rape of K.G.; Level 3 felony aiding, inducing, or causing the rape of K.G.; Level 6 felony criminal confinement of K.G.; and Level 6 felony aiding, inducing, or causing the criminal confinement of K.G. The juvenile court entered true findings on all allegations and ordered T.S. committed to the Department of Correction ("DOC") until he turns eighteen. T.S. contends that the State produced insufficient evidence to sustain the adjudications against him, except for the finding that he criminally confined A.M. Because we disagree, we affirm the judgment of the juvenile court.

# Facts and Procedural History

[2] At approximately 1:00 a.m. on June 24, 2017, A.M. went with a friend to the home of B.S. in Marysville, having been led to believe by B.S. and T.S. that they were going to a party. Instead of a party, the girls found only B.S., T.S., J.C., and B.S.'s sister at the house. T.S. asked A.M. if she wanted to go on an

"adventure[,]" and she agreed to. Tr. Vol. II p. 196. T.S. took A.M. to a truck that was parked nearby, in which he attempted to undress A.M. for at least twenty minutes, "kissing on [her] and […] trying to grab [her] thighs and stuff." Tr. Vol. II p. 196. Although A.M. made repeated attempts to escape, T.S. forcibly prevented her.

[3] After twenty minutes, T.S. left the truck and B.S. entered. B.S. attempted to remove A.M.'s pants for approximately ten minutes before giving up, forcibly preventing her from leaving. Finally, J.C. took B.S.'s place in the truck. J.C. managed to remove A.M.'s pants, pulled his own down to his knees, positioned himself on top of A.M., and had forcible intercourse with her. When A.M. emerged from the truck, B.S. and T.S. were standing outside.

[4] On July 11, 2017, K.G. agreed to "hang out" with B.S., J.C., and T.S., and they came to get her at 5:00 a.m. Tr. Vol. II p. 105. Once at B.S.'s house, B.S. told K.G. that he needed to talk to her, took her to an upstairs room, locked the door, turned out the lights, and shoved her onto a bed. K.G., knowing that B.S. has a bad temper, was "scared [and] fearful." Tr. Vol. II p. 111. When B.S. told K.G. that she needed to remove her clothing, she responded that she did not want to have intercourse with him. B.S. indicated that K.G. would not have a ride home if she did not have intercourse with him, so she removed her pants and had intercourse with B.S. K.G. felt that force was being used on her. B.S. went out to the front porch and told T.S. that he had had intercourse with K.G. J.C. went inside, and T.S. knew that he was going to the bedroom where K.G. was.

J.C. came into the bedroom and locked the door behind him. K.G. felt "[s]cared" because she knew what he was going to try but also knew that he was stronger than she was. Tr. Vol. II p. 113. When K.G. told J.C. that she could not have intercourse with him, he said, "What do you mean? It's my turn." Tr. Vol. II p. 107. J.C. removed K.G.'s underwear and had forcible intercourse with K.G.

After J.C. left, T.S. came into the room and closed the door behind him. K.G. told T.S. that she did not want to have intercourse with him and that she wanted to go home. Although K.G. believed that there was a chance that she could "talk him out of it," she feared that T.S. would force intercourse on her. Tr. Vol. II p. 114. T.S. told K.G. to remove her shirt or he would do it for her and to remove her bra. K.G. removed the garments because she did not want T.S. to do it. T.S. and K.G. had intercourse after he forced his penis into her vagina. T.S. later told police that he knew what B.S. and J.C. were going to do with K.G. T.S. also visibly agreed with the officers' characterization that he had "facilitated" K.G. sleeping with three persons in one day. State's Ex. 5, File 5 at 07:49–08:07.

On October 16, 2017, the State filed an amended delinquency petition, which alleged that T.S. committed (if committed by an adult) Level 3 felony rape of A.M.; Level 3 felony aiding, inducing, or causing the rape of A.M.; Level 6 felony criminal confinement of A.M.; Level 6 felony aiding, inducing, or causing the criminal confinement of A.M.; Level 3 felony rape of K.G.; Level 3 felony aiding, inducing, or causing the rape of K.G.; Level 6 felony criminal

confinement of K.G.; and Level 6 felony aiding, inducing, or causing the criminal confinement of K.G. On October 25, 2017, the State dismissed the rape allegation concerning A.M. with T.S. as the principal. On October 31, 2017, the juvenile court entered true findings on all remaining allegations. On November 29, 2017, the juvenile court ordered that T.S. be placed in the DOC until he turns eighteen years old.

## Discussion and Decision

[8] T.S. contends that the State failed to produce sufficient evidence to sustain six of the seven adjudications against him. When reviewing claims of insufficient evidence in a juvenile case, appellate courts apply the same standard of review as if it were an appeal of a criminal conviction. *K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013). In reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). "It is the fact-finder's role, not that of appellate courts to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We look only to evidence in a light most favorable to the juvenile court's ruling and must affirm the conviction unless no reasonable fact-finder could find the elements proven beyond a reasonable doubt. *McHenry*, 820 N.E.2d at 126. The evidence need not overcome every reasonable hypothesis of innocence. *Craig v. State*, 730 N.E.2d 1262, 1266 (Ind. 2000).

# I. Accomplice Offenses

T.S. challenges the juvenile court's findings that he aided, induced, or caused the rapes and criminal confinements of A.M. and K.G. An accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence of their concerted action. *Alvies v. State*, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009) (citing *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998)); Ind. Code § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]"). The accomplice need not participate in every element of the crime to be convicted of it. *Alvies*, 905 N.E.2d at 61 (citing *McGee*, 699 N.E.2d at 265). Factors to be considered by the fact-finder include: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000) (citing *Edgecomb v. State*, 673 N.E.2d 1185, 1193 (Ind. 1996) and *Johnson v. State*, 490 N.E.2d 333, 334 (Ind. 1986)).

In order to adjudicate T.S. delinquent based on accomplice liability for rape, the State was required to prove that T.S. did knowingly aid, induce or cause B.S. and/or J.C. to knowingly or intentionally have sexual intercourse with A.M. and/or K.G., who were compelled by force or the imminent threat of force. Ind. Code §§ 35-42-4-1(a)(1), 35-41-2-4. In order to adjudicate T.S. delinquent based on accomplice liability for criminal confinement, the State was required to prove that T.S. did knowingly aid, induce, or cause B.S. and/or J.C. to

knowingly or intentionally confine A.M. and/or K.G. without their consent. Ind. Code §§ 35-42-3-3(a), 35-41-2-4.

## A.  A.M.

[11]    T.S. claims that the State produced evidence sufficient only to establish that he was there when B.S. and J.C. confined and/or raped A.M. in the truck. (Appellant's Br. 15).  The record, however, contains ample evidence that T.S. was not as passive as he would have us believe.  A.M. testified that T.S. coaxed her to the truck where she was raped, telling her that they were going on an "adventure[.]"  Tr. Vol. II p. 196.  After T.S. confined A.M. for twenty minutes against her will, T.S. let B.S. into the truck, who also tried for several minutes to force himself on A.M. before giving up.  B.S. then made way for J.C., who raped A.M.  When A.M. emerged from the truck after being raped by J.C., T.S. and B.S. were standing next to the truck.  The three boys "seem[ed] to know what they were going to do[.]"  Tr. Vol. II p. 214.

[12]    The factors mentioned by the *Wieland* Court are present in this case.  T.S. was at the scene of the crime and was friends with B.S. and J.C., so companionship was established.  T.S. did nothing to stop B.S.'s unsuccessful attempt to rape A.M. or J.C.'s successful attempt.  T.S.'s conduct before, during, and after also indicates concerted action, coaxing A.M. to the truck where the rape and confinement occurred, passing her to B.S., and standing nearby the truck as B.S. and J.C. were in the truck with A.M.  We conclude that this is sufficient evidence to sustain a finding that T.S. was acting in concert with B.S. and J.C.

to carry out a plan for all three of them to take turns confining and/or raping A.M. in the truck.

## B. K.G.

[13] T.S. contends that the evidence cannot establish that he was an accomplice in the rape and confinement of K.G. by B.S. and J.C. Specifically, T.S. argues that because he "was not in the vicinity at all," Appellant's Br. p. 15, he cannot be adjudicated delinquent under an accomplice liability theory for the acts that B.S. and J.C. perpetrated against K.G.

[14] The evidence, however, supports findings that T.S. was near the bedroom at all relevant times and knew exactly what was occurring within. While B.S. and J.C. were raping K.G., T.S. was on the front porch of B.S.'s house, and the stairs that led to the bedroom are just across a living room that is accessed by the front door. Far from not being in the vicinity at all, the record indicates that T.S. was never more than a few seconds from the bedroom. Moreover, in his statement to the police, T.S. admitted that he had known what B.S. and J.C. were going to do with K.G. When B.S. emerged from the bedroom after raping K.G., he told T.S. that he had had sex with K.G., and when J.C. left, T.S. knew that he was going to the bedroom. After J.C. raped K.G., he came out of the bedroom and told T.S. that T.S. could go upstairs if he wanted to. Finally, T.S. agreed when officers told him that he had "facilitated" K.G. having intercourse with three persons in one day. State's Ex. 5, File 5 at 07:49–08:07.

[15] Once again, the *Wieland* factors relevant to accomplice liability are present here. T.S. was at the house with his friends B.S. and J.C., so evidence of companionship with confederates exists. Not only did T.S. fail to object to the commission of B.S.'s and J.C.'s offenses, he committed his own. T.S.'s behavior before, during, and after the offenses indicates concerted action. T.S. used K.G.'s trust in him to lure her to B.S.'s house. T.S.'s presence in the house with B.S. and J.C. helped create K.G.'s sense of helplessness and submission and, after he raped K.G., T.S. pretended like nothing had happened. It is also worth noting that K.G. testified that J.C. told her "It's my turn" before raping her, suggesting that it was understood that all three boys would have their "turn" with K.G. The State produced sufficient evidence to sustain a finding that T.S. aided, induced, or caused B.S. and/or J.C. to criminally confine and rape K.G.

## II. Rape and Criminal Confinement of K.G.

### A. Rape

[16] In order to support a finding that T.S. committed what would be the rape of K.G. if committed by an adult, the State was required to prove that he knowingly or intentionally had sexual intercourse with K.G., and/or did cause K.G. to perform or submit to other sexual conduct, where K.G. was compelled by force or by the imminent threat of force. Ind. Code § 35-42-4-1(a)(1). T.S. claims only that the State did not prove that he used sufficient force to sustain a finding that he raped K.G.

[17] "[T]he offense of committing rape requires the State to prove that the victim's 'submission was compelled by force.'" *Newbill v. State*, 884 N.E.2d 383, 392–93 (Ind. Ct. App. 2008) (quoting *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996)), *trans. denied*. The *Tobias* Court noted that the language of the rape statute, as a whole,

> demonstrates that it is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance.

*Tobias*, 666 N.E.2d at 72.

[18] When T.S. came into the bedroom, K.G. specifically told him that she did not want to have intercourse with him. T.S. responded, "'Come on, just do it one more time. Just do it for me.'" Tr. Vol. II p. 108. K.G. refused and said that she wanted to go home. T.S. demanded that K.G. take her shirt off, telling her, "'You do it or I will.'" Tr. Vol. II p. 108. T.S. told K.G. to take off her bra as well. T.S. also indicated that K.G. would not be able to go home until "[a]fter he had sex with [her.]" Tr. Vol. II p. 117. K.G. testified that she felt "trapped[,]" scared, and fearful that T.S. would force intercourse on her. Tr. Vol. II p. 119. T.S. then pushed his penis into K.G.'s vagina "[w]ith force" against her wishes, knowing that it was against her wishes. Tr. Vol. II p. 120. This is more than sufficient evidence to establish that K.G.'s submission was compelled by force.

# B. Criminal Confinement

[19] In order to support a finding that T.S. criminally confined K.G., the State was required to prove that T.S. did knowingly or intentionally confine K.G. without her consent. Ind. Code § 35-42-3-3(a). T.S. claims that the record contains no evidence that T.S. confined K.G. beyond the amount of time necessary to complete intercourse. Although this argument might more appropriately be characterized as a claim of double jeopardy rather than one of insufficient evidence, it is without merit either way. Even when confinement is part of one offense, such as rape, that confinement can support a separate conviction for criminal confinement if it lasts longer than necessary to complete the rape. *See, e.g.*, *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001) ("[W]here the confinement of a victim is greater than that which is inherently necessary to rob them, the confinement, while part of the robbery, is also a separate criminal transgression.").

[20] From the moment T.S. came into the bedroom and closed the door behind him, K.G. felt "a little trapped[,]" Tr. Vol. II p. 119, and the record is clear that the intercourse did not occur immediately. T.S. told police that before he had intercourse with K.G., they had a "meaningful" conversation, during which he was trying to convince her to have intercourse voluntarily. State's Ex. 5, File 5 at 08:12–08:26. T.S.'s conversation with K.G., in which he tried to convince her to have intercourse and during which K.G. felt "trapped" and not free to leave, constituted confinement separate from the confinement inherent in the subsequent rape. Because the State presented evidence sufficient to find that

T.S. confined K.G. before the rape, the adjudication that he committed criminal confinement need not be overturned.

[21] We affirm the judgment of the juvenile court.

Bailey, J., and Brown, J., concur.